H. TRIMBLE RUSSELL *et al.*, Plaintiffs, v. THE HERTZ CORPORATION *et al.*, Defendants. (Ron Freund *et al.*, Plaintiffs-Appellants, v. Avis Rent A Car System, Inc., *et al.*, Defendants-Appellees).

First District (2nd Division)   No. 85—240

Opinion filed December 10, 1985.

Orlikoff, Flamm & Patner and Neistein, Richman, Hauslinger & Young, Ltd., both of Chicago (Arnold M. Flamm, Marshall Patner, and Robert D. Allison, of counsel), for appellants.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Rosalyn B. Kaplan, Assistant Attorney General, both of Chicago, of counsel), for appellees J. Thomas Johnson and Jerome Cosentino.

James D. Montgomery, Corporation Counsel, of Chicago (Jennifer A. Keller, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

Friedman & Koven, of Chicago (Michael D. Sher and Sherre Binik Levene, of counsel), for appellee Avis Rent A Car System, Inc.

Reuben & Proctor, of Chicago (Thomas F. Ging and James Harbert, of counsel), for appellee The Hertz Corporation.

PRESIDING JUSTICE STAMOS delivered the opinion of the court:

Plaintiffs appeal from the trial court's dismissal of their complaint for failure to state a cause of action.

Claiming that he was taxed excessively on the rental of a car, plaintiff Ron Freund sued Avis Rent a Car System (Avis); the city of Chicago; Illinois Director of Revenue, J. Thomas Johnson; and State Treasurer, Jerome Cosentino. Another plaintiff, Kathleen Fennell, joined Freund in his complaint, but she sued the Hertz Corporation (Hertz), as well as the city of Chicago and State officials. Freund and Fennell brought their action individually and as representatives of classes of persons similarly situated. The Freund-Fennell action was consolidated in the trial court with two similar cases, Russell v. Hertz and Barnes v. Avis. The Russell and Barnes cases were dismissed, however, and this appeal concerns only the Freund-Fennell complaint.

It is Ron Freund's claim that Avis taxed him incorrectly when he rented a car in October 1982. Freund used his credit card to rent the vehicle. Before he got his car, he signed an agreement in which he promised to pay charges of $18 per day for rental and $5.50 per day for an insurance-type protection called "collision damage waiver." Freund then signed a credit card slip with the amount of total charges left blank, and by the terms of his agreement, he authorized Avis to include charges for taxes and refueling service in his final bill. When Freund returned his car to Avis, the agent computed all of the charges and inserted them in the appropriate blanks in the rental

agreement. These charges were as follows:

| | | |
|---|---|---|
| Automobile Rental (2 days) | $36.00 | |
| Collision Damage Waiver (2 days) | 11.00 | |
| Subtotal | | $47.00 |
| Tax at 11% | | 5.17 |
| Refueling Service | | 4.75 |
| Net Amount | | $56.92 |

Several days after Renting his car, Freund filed an action against Avis, complaining for the first time about a tax overcharge. According to Freund, he overpaid city and State taxes because Avis taxed him on the rental value of his car and on the cost of collision damage waiver when taxes were owing only on the rental value of the auto.

Plaintiff Fennell made allegations against Hertz that were similar to Freund's charges against Avis. Fennell rented a car using a credit card and signed a rental agreement. She agreed to pay a rental fee of $49 per day and elected to take Hertz's collision damage waiver at a cost of $6 per day. Like her co-plaintiff, Fennell signed a credit card slip with the total charges left blank, and she authorized Hertz to include charges for tax and refueling. When Fennell returned her car, the agent filled in the rental agreement with the following charges, which Fennell paid without protest:

| | | |
|---|---|---|
| Automobile Rental (1 day) | $49.00 | |
| Rental Tax 6% | 2.94 | |
| Refueling Service | 8.23 | |
| Collision Damage Waiver (1 day) | 6.00 | |
| Subtotal | | $66.17 |
| City of Chicago Transaction Tax Effective Rate 5.7% | | 3.77 |
| Personal Accident Insurance | | 2.25 |
| Net Amount due | | $72.19 |

Fennell later filed this action, claiming that Hertz incorrectly computed city and State taxes in two ways. First, Hertz charged a rental tax of 6%, when the correct amount of State taxes was only 5%. Second, Hertz improperly included collision damage waiver charges in the Chicago transaction tax.

The trial court entered an order on March 27, 1984, dismissing the Freund-Fennell complaint. The court found that the plaintiffs had not paid their taxes under protest or duress despite the fact that their rental agreements furnished sufficient information upon which to for-

mulate a protest. Consequently, the plaintiffs had failed to state a cause of action, in the court's judgment.

The plaintiffs then amended their complaint to include an allegation that payment of the disputed tax was involuntary. According to the amended complaint, plaintiffs did not know at the time of their car rentals that they were being taxed excessively, and had they known, they would have protested vigorously.

Despite this amendment, the trial court found that plaintiffs had still failed to state a cause of action. As a result, the court dismissed the complaint as to all defendants, and plaintiffs now appeal from this order.

■ The plaintiffs' first objection on appeal is that their complaint should not have been dismissed for failure to state a cause of action because the "voluntary payment doctrine" is an affirmative defense and not part of their *prima facie* case. The defendants moved to dismiss the plaintiffs' complaint pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—615). This section provides that an action may be dismissed or a pleading stricken if it is substantially insufficient in law. Plaintiffs contend that even if they paid the disputed tax in this case voluntarily, such voluntary payment is an affirmative defense, which cannot be raised pursuant to section 2—615 of the Code of Civil Procedure. Instead, the issue must be raised pursuant to section 2—619, according to plaintiffs. See Ill. Rev. Stat. 1983, ch. 110, par. 2—619.

Hertz and Avis contend that the plaintiffs have waived their objection to the form of defendants' motion because they did not raise this issue in the proceedings below. The defendants' argument in this regard is persuasive. All defects in pleadings are waived by failure to raise them in the trial court, where they can be handled more expeditiously than they can on review. (*Scott v. Skokie Valley Community Hospital* (1977), 54 Ill. App. 3d 766, 768-69, 370 N.E.2d 107; see also *Hays v. Louisiana Dock Co.* (1983), 117 Ill. App. 3d 512, 515, 452 N.E.2d 1383.) A motion, such as the one brought here pursuant to section 2—615, is a pleading. (*Chimerofsky v. School District No. 63* (1970), 121 Ill. App. 2d 371, 374, 257 N.E.2d 480.) Since the plaintiffs failed to object to the form of defendants' motion when it was brought in the trial court, they have waived this objection for the purpose of review.

Furthermore, plaintiffs are unpersuasive when they contend that the voluntary payment doctrine can only be raised in a section 2—619 motion. This is so because involuntary payment is an element that the taxpayer must prove in order to claim a tax refund. It is true that in

*Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 59, 319 N.E.2d 5, the voluntary payment doctrine was framed by defendants as an affirmative defense. It is also true that in *Getto v. City of Chicago*, the court observed somewhat ambiguously that "it must be shown that the taxpayer plaintiff had knowledge of the facts upon which to frame a protest and also that the payments were not made under duress or compulsion." *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, 426 N.E.2d 844, *cert. denied sub nom. Illinois Bell Telephone Co. v. Getto* (1982), 456 U.S. 946, 72 L. Ed. 2d 468, 102 S. Ct. 2012.

■ The weight of authority establishes, however, that involuntary payment is an element of the taxpayer's cause of action. If his complaint fails to allege a sufficient factual basis to support this element, the plaintiff's action will be dismissed. (*United Private Detective & Security Association, Inc. v. City of Chicago* (1977), 56 Ill. App. 3d 242, 244, 371 N.E.2d 1087; *Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 96-97, 337 N.E.2d 305; *Bank & Trust Co. v. Cullerton* (1975), 25 Ill. App. 3d 721, 726-27, 324 N.E.2d 29; *Fisher v. City of Ottawa* (1972), 8 Ill. App. 3d 553, 554-55, 289 N.E.2d 717.) Moreover, even if the court's reference in *Getto* suggests that voluntary payment is an affirmative defense, the *Getto* court also cited with approval, the following language from *Illinois Glass Co. v. Chicago Telephone Co.*: " '*** It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary ***.' " (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, 426 N.E.2d 844, citing *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541, 85 N.E. 200.) This passage from *Illinois Glass* implies that plaintiff must demonstrate involuntary payment as part of his *prima facie* case. In the absence of such demonstration, defendants can properly bring a motion to dismiss under section 2—615, as they did in this case.

■ The plaintiffs' second contention on appeal is that the taxing statutes implicated by this case dispense with the requirement of payment under protest or duress. This contention lacks merit, however, because none of these statutes precludes application of the voluntary payment doctrine in the case at bar.

The city of Chicago transaction tax allows a taxpayer to file a claim with the Department of Revenue when the taxpayer has remitted an excessive amount under a mistake of fact or law. However, the "taxpayer" in this ordinance is one "who is required or authorized to collect and remit such transaction tax." (Chicago Municipal Code, par. 200.1—2(A)(1) (1981).) Since the plaintiff-lessees are not taxpayers as defined in this section, the refund provision does not apply to them.

Similarly, plaintiffs are excluded from the refund provision of the Municipal Automobile Renting Occupation Tax Act. (Ill. Rev. Stat. 1983, ch. 24, par. 8—11—7.) The municipal tax statute incorporates by reference a refund provision of the Retailer's Occupation Tax Act, which allows a "claimant" or vendor to file for a refund with the Department of Revenue when he has remitted taxes in error. (Ill. Rev. Stat. 1983, ch. 120, par. 445.) Plaintiffs, as lessees, are not protected by this refund mechanism, however, since they are not the ones who remit the tax to the government.

■ Finally, plaintiffs claim that they are exempt from the voluntary payment doctrine by operation of the automobile renting occupation and use tax. (Ill. Rev. Stat. 1983, ch. 120, par. 1704.) The automobile renting statute incorporates by reference a refund provision of the Use Tax Act, which creates a legal right in the buyer to seek a tax refund from his seller. (Ill. Rev. Stat. 1983, ch. 120, par. 439.3.) While this provision creates a cause of action in the buyer or lessee in some cases, it operates only when the vendor or lessor has been unjustly enriched because he has failed to remit the excessive tax to the State. (*Adams v. Jewel Companies, Inc.* (1976), 63 Ill. 2d 336, 344-46, 348 N.E.2d 161.) Plaintiffs here do not contend that their lessors have retained excessive tax money. Therefore, the refund provision of the Use Tax Act is inapplicable, and plaintiffs are still bound by the voluntary payment doctrine.

The plaintiff's third argument on appeal is that they did state a cause of action. Plaintiffs claim that their amended complaint set forth facts sufficient to show that the payment of rental taxes had been involuntary. Again, plaintiffs' argument is unpersuasive. In judging whether the trial court was correct in dismissing a complaint, the reviewing court must determine whether the plaintiff's allegations, when viewed most favorably to him, are sufficient to set forth a cause of action. The complaint should not be dismissed unless plaintiff can prove no set of facts which will support his cause. *Curtis v. Birch* (1983), 114 Ill. App. 3d 127, 129, 448 N.E.2d 591.

■ In the present case, plaintiffs failed to establish a sufficient factual basis to support their claim. To sustain an action for the refund of taxes, a plaintiff must show not only that "the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion." (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, 426 N.E.2d 844, citing *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 541, 85 N.E. 200.) Payment under protest is the typical means by which a taxpayer evinces

his belief that a tax is improper. However, failure to protest does not preclude recovery when the taxpayer lacked knowledge of the facts upon which to frame a protest or when he made payment under duress. 86 Ill. 2d 39, 49, 426 N.E.2d 844.

The taxes collected in this case were clearly unlawful. Under the Chicago Transaction Tax Ordinance, Hertz and Avis should have collected a 6% tax based solely upon the rental value of plaintiffs' automobiles. (Chicago Municipal Code, par. 200.1—2(A)(1) (1981).) Additionally, the lessors should have collected a 4% automobile renting occupation and use tax and 1% municipal automobile renting occupation tax, but again these taxes should have been levied only on rental value, and not on the cost of collision damage waiver or refueling service. (See Ill. Rev. Stat. 1983, ch. 120, par. 1704; Ill. Rev. Stat. 1983, ch. 24, par. 8—11—7.) Avis correctly charged plaintiff Freund an 11% tax, but incorrectly included extra charges in the tax base. Hertz improperly included extra charges in plaintiff Fennell's Chicago transaction tax, and also levied a 6% "rental tax" on the rental value of the car, when the total of State taxes owed was only 5%.

These taxes were improper, but plaintiffs paid them without comment despite the fact that their rental agreements furnished sufficient information upon which to base a protest. Plaintiffs claim that the only way that a rental customer could have developed a protest is if he were thoroughly familiar with the various taxes imposed by statute and ordinance. However, payment made with full knowledge of facts and in ignorance only of legal rights cannot be recovered. *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 543, 85 N.E. 200.

Furthermore, although plaintiffs contend that they were thoroughly confused by the charges on their rental agreements, the errors complained of are apparent from the face of these documents. The Avis agreement clearly includes a tax on the cost of collision damage waiver. Similarly, the Hertz agreement plainly includes an erroneous 6% tax on rental value and a 5.7% tax on the cost of collision damage waiver and refueling service. Since nothing more than the agreements themselves was necessary to discern these errors in taxation, plaintiffs had all the facts they needed to formulate a protest before they left the rental offices.

Plaintiffs note that the error complained of in this case is the way in which a tax was computed rather than the legality of the tax itself. According to the plaintiffs, when the error is in the computation of a tax, as it was here and in the *Getto* case, then the taxpayer does not have sufficient facts upon which to base a protest. To support this

proposition, plaintiffs cite *Isberian v. Village of Gurnee* (1983), 116 Ill. App. 3d 146, 452 N.E.2d 10, and *Lusinski v. Dominick's Finer Foods* (1985), 136 Ill. App. 3d 640, 483 N.E.2d 588.

It is true that in *Isberian* and *Lusinski*, the error complained of was the imposition of a tax rather than its correct computation. However, this fact does not distinguish those cases from the present situation. Both the *Isberian* and *Lusinski* courts reiterated the rule announced in *Getto*. The taxpayer is excused from the voluntary payment doctrine only when he lacks sufficient facts upon which to formulate a protest. Regardless of the precise errors complained of, when the plaintiffs have sufficient information, as they did here, they must protest or show that they paid under duress.

Finally, plaintiffs failed to allege in their amended complaint that they paid these taxes under duress. Moreover, the facts in this case do not demonstrate that the plaintiffs were compelled to pay an erroneous tax. In order to render payment compelled by duress, such pressure must be brought to bear upon the payor as to interfere with his rights to person or property. (*Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 543, 85 N.E. 200; *United Private Detective & Security Association, Inc. v. City of Chicago* (1977), 56 Ill. App. 3d 242, 244, 371 N.E.2d 1087.) There must be some actual or threatened power wielded over the payor from which he has no immediate relief except payment. *Bank & Trust Co. v. Cullerton* (1975), 25 Ill. App. 3d 721, 726, 324 N.E.2d 29.

In the present case, Hertz and Avis did not threaten to interfere with plaintiffs' personal or property rights. Neither did the lessors attempt to wield any power so that plaintiffs were left with no recourse except payment. A lawsuit was the most serious consequence that could have befallen plaintiffs had they refused to pay their bills as computed by Hertz and Avis. However, the prospect of suit, in itself, does not constitute duress. *Kaplan v. Kaplan* (1962), 25 Ill. 2d 181, 187, 182 N.E.2d 706.

It is true that disastrous business consequences qualify as duress. If a plaintiff will suffer a virtual destruction of business as a result of his failure to pay an illegal sum, then his payment is compulsory. (*Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 51-52, 426 N.E.2d 844.) The plaintiffs contend on appeal that they would have been beset by a business handicap had they refused to pay the disputed tax in this case. According to the plaintiffs, they would have been inconvenienced if they were forced to use some form of transportation other than a rental car. They also contend that if they had leased cars from an agent smaller than Hertz or Avis, they would have received "infe-

rior automobiles with dirty ashtrays."

Plaintiffs' inconvenience does not rise to the level of business disaster. Their situation is distinguishable from cases that qualify as economic duress. In *Getto v. City of Chicago*, the taxpayers were faced with the shut-down of telephone service. (86 Ill. 2d 39, 51, 426 N.E.2d 844.) In *United Private Detective & Security Association, Inc. v. City of Chicago* (1977), 56 Ill. App. 3d 242, 244, 371 N.E.2d 1087, plaintiffs were threatened with imprisonment and fines of $1,000 per day if they failed to pay a license fee. By contrast, the plaintiffs here were not faced with the deprivation of an essential service and, in fact, had already used their rental cars when they paid the disputed tax. Therefore, they were not compelled by economic coercion to pay a tax against their will.

■■■ Plaintiffs' final objection on appeal is that defendants J. Thomas Johnson and Jerome Cosentino have waived the protection of sovereign immunity. In their reply briefs, these defendants raised the doctrine of sovereign immunity for the first time. Despite their belated assertion of immunity, however, the defendants are not precluded from raising this issue on appeal, and, in fact, they appear to be immune from suit.

The State is immune from suit without its consent. (Ill. Rev. Stat. 1983, ch. 127, par. 801; *Scoa Industries, Inc. v. Howlett* (1975), 33 Ill. App. 3d 90, 94, 337 N.E.2d 305.) The Illinois Court of Claims has, with limited exceptions, exclusive jurisdiction to entertain actions against the State. (Ill. Rev. Stat. 1983, ch. 37, par. 439.8(a).) The action in this case is a suit against the State despite the fact that the State itself is not a named party.

■■■ Determination of whether suit is against the State depends upon the issues involved and the relief sought. When an officer of the State performs acts which are illegal or beyond his authority, then he may be sued. However, when the officer merely represents the State, and there is no issue as to the lawfulness of the officer's actions, then the suit is against the State. (*City of Springfield v. Allphin* (1978), 74 Ill. 2d 117, 124, 384 N.E.2d 310; *Sass v. Kramer* (1978), 72 Ill. 2d 485, 490-91, 381 N.E.2d 975.) The defendants here merely represent the State in liability, so suit against them is barred by sovereign immunity.

■■■ Moreover, the defendants have not waived immunity by failing to raise the issue in the trial court. It is the exclusive province of the legislature to determine when and where the State may be sued, and an officer of the State is not empowered to consent to a suit. (*J.L. Simmons Co. v. Capitol Development Board* (1981), 98 Ill. App.

3d 445, 447, 424 N.E.2d 821; see also *Crane Paper Stock Co. v. Chicago & Northwestern Ry. Co.* (1976), 63 Ill. 2d 61, 68, 344 N.E.2d 461.) A circuit court is without subject matter jurisdiction to decide a case against the State. (*J.L. Simmons Co. v. Capitol Development Board* (1981), 98 Ill. App. 3d 445, 447, 424 N.E.2d 821.) Lack of subject matter jurisdiction cannot be waived by a State officer; therefore, the State defendants are not barred from raising sovereign immunity for the first time on appeal. *People ex rel. Compagnie Nationale Air France v. Giliberto* (1978), 74 Ill. 2d 90, 105, 383 N.E.2d 977, *cert. denied sub nom. Giliberto v. Compagnie Nationale Air France* (1979), 441 U.S. 932, 60 L. Ed. 2d 660, 99 S. Ct. 2052.

In light of the foregoing analysis, the judgment of the trial court is affirmed.

Affirmed.

HARTMAN and SCARIANO, JJ., concur.