MARRIOTT CORPORATION, Plaintiff-Appellee, v. THE DEPARTMENT OF TRANSPORTATION *et al.*, Defendants-Appellants.

Second District   No. 2—88—0953

Opinion filed July 17, 1989.

Neil F. Hartigan, Attorney General, of Springfield, and Robert S. Hirschhorn, of Walsh, Case, Coale & Brown, of Chicago (Jeffrey E. Schiller and Richard A. Redmond, of counsel), for appellants.

Daniel J. Voelker, of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Jeffrey Jahns, of counsel), for appellee.

JUSTICE REINHARD delivered the opinion of the court:

Defendants, the Illinois Department of Transportation (Department) and James M. Graziano, a traffic permit engineer with the Department, appeal from the judgment of the circuit court of Lake County ordering defendants to issue a permanent permit to plaintiff, Marriott Corporation, allowing access from a parcel of land owned by plaintiff to Lake-Cook Road, and ordering $244,000 paid by plaintiff into the State's protest fund returned to plaintiff.

The following issues are raised on appeal: (1) whether the circuit court had subject-matter jurisdiction over this cause; and (2) whether the circuit court erred in finding that a prior owner of plaintiff's parcel had not transferred the right of access to Lake-Cook Road to the State pursuant to a deed dedicating the property for use as a freeway.

The record establishes the following pertinent facts. In 1950, Anna Palo executed a deed of dedication to the State, dedicating a parcel of property owned by her, lot 1, for use as a public highway. The deed of dedication contained the following provision:

> "[T]he Grantor further as a part of this dedication, on behalf of himself, his heirs, executors, administrators and assigns, does hereby release, quit claim and extinguish any and all rights or easements of access, crossing, light, air and view under which the tract of land herein conveyed and dedicated might otherwise be servient to abutting lands of Grantor."

Lot 1 is northwest of the intersection of Lake-Cook Road and the Edens Expressway. Following the dedication, an entrance ramp to the southbound Edens Expressway was constructed, part of which was on lot 1. The ramp was removed in 1982.

In 1985, the General Assembly enacted legislation releasing all of lot 1, except for the southernmost 90 feet running along Lake-Cook Road, from the dedication. (Pub. Act 84—974, eff. September 25, 1985.) The legislative release recited that "there is no existing right of access nor will access be permitted in the future *** [to the Edens Expressway and Lake-Cook Road]." Pub. Act 84—974, §6—2, eff. September 25, 1985.

Plaintiff acquired the subject property in January 1987 for the purpose of constructing a hotel. Plaintiff retained an attorney to obtain approval from the Department for construction of a driveway entering onto Lake-Cook Road. In March 1987, plaintiff received a permit from the Department for construction of a right in/right out only driveway. Several months later, plaintiff's attorney was told that the permit should have been conditioned upon payment by plaintiff of $244,000. By letter dated June 26, 1987, James M. Graziano informed

plaintiff's attorney that, because plaintiff had not paid $244,000 required by the Department, the previously issued permit has been cancelled.

On September 23, 1987, plaintiff filed its complaint in this cause in the circuit court of Lake County, alleging that defendants had denied plaintiff its right of reasonable means of ingress to and egress from its property, and seeking, *inter alia*, a writ of *mandamus* to compel defendants to validate the previously issued permit and to take all other action as would allow plaintiff to commence and complete construction of the driveway.

On October 22, 1987, an agreed order was entered by the circuit court which stated, *inter alia*, that the Department had offered to sell to plaintiff a "release of access control" to Lake-Cook Road for $244,000 and that plaintiff had paid that sum under protest. The agreed order provided that defendants would issue a temporary permit allowing construction of the driveway; that if plaintiff did not accept $244,000 as the price of the release of access control, the issue of fair market value of the release would be tried before the court; and that if the circuit court found that the Department was not entitled to receive compensation in connection with issuance of the permit, the $244,000 would be refunded by the Department.

Following trial, the parties filed post-trial briefs. Defendants contended that the deed of dedication executed in 1950 transferred to the State the dedicator's right of access to Lake-Cook Road, and therefore the State was entitled to be compensated for plaintiff's use of this right. Defendants further contended that pursuant to section 1 of "An Act in relation to immunity for the State of Illinois" (Immunity Act) (Ill. Rev. Stat. 1987, ch. 127, par. 801), the circuit court was without subject-matter jurisdiction over the cause, which should have been brought in the Court of Claims.

The circuit court found that, in view of the plaintiff's payment of a sum of money under protest, the circuit court had jurisdiction over the case pursuant to section 2a of the State Officers and Employees Money Disposition Act (Ill. Rev. Stat. 1987, ch. 127, par. 172). The court further found that the Department was not entitled to receive compensation in connection with issuance of the permit. The court, therefore, ordered the return of the $244,000 payment and issuance of a permanent permit. The orders of the circuit court were stayed pending appeal.

Defendants initially contend that the circuit court was at all times without jurisdiction over this cause. Defendants maintain that this suit, as it involved the determination of the State's interest in prop-

erty, was an action against the State which could only be instituted in the Court of Claims. Defendants further maintain that the payment under protest did not serve to confer jurisdiction upon the circuit court. Plaintiff responds that jurisdiction was proper at the outset, but that in any event the payment of $244,000 into the State protest fund empowered the circuit court to determine the proper disposition of that money.

■ We first consider the question of the jurisdiction of the circuit court without regard to the payment under protest. Section 1 of the Immunity Act provides:

> "Except as provided in the 'Illinois Public Labor Relations Act', enacted by the 83rd General Assembly, or except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." Ill. Rev. Stat. 1987, ch. 127, par. 801.

■ Plaintiff maintains that this provision has been strictly construed to apply only to actions where a party seeks a monetary judgment against the State for which there has been no appropriation by the General Assembly and which is payable out of the State's general fund. While, indeed, such actions must be brought in the Court of Claims, plaintiff is incorrect in its assertion that the Immunity Act applies only to such suits. More generally, the question to be addressed is whether a given action is against the State. The determination of whether a suit is brought against the State and thus barred by the doctrine of sovereign immunity does not depend on the identity of the formal parties but rather on the issue raised and the relief sought. (*Senn Park Nursing Center v. Miller* (1984), 104 Ill. 2d 169, 186, 470 N.E.2d 1029.) When the State will be directly and adversely affected by the judgment, making the State the real party against whom relief is sought, the suit is against the State. (*Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 408-09, 475 N.E.2d 863.) When the property of the State is involved, the State becomes directly and adversely affected by the suit, and the action must be held to be one against the State. *Sass v. Kramer* (1978), 72 Ill. 2d 485, 491, 381 N.E.2d 975; *Aurora National Bank v. Simpson* (1983), 118 Ill. App. 3d 392, 397, 454 N.E.2d 1132.

*Sass v. Kramer* (1978), 72 Ill. 2d 485, 381 N.E.2d 975, involved an action to quiet title to and for a writ of possession of land over which the State had acquired an easement for a public highway pursuant to a dedication executed by the plaintiff's predecessors in title. The

plaintiff claimed that the easement had been abandoned. Our supreme court held that such an action could not be maintained in any court except as provided in the Court of Claims Act. (*Sass*, 72 Ill. 2d at 490-91, 381 N.E.2d at 978.) We find this case controlling.

■ Plaintiff notes that its complaint in the instant case sought a writ of *mandamus*. Plaintiff contends that the circuit court has sub-ject-matter jurisdiction to issue a writ of *mandamus* against a State official directing him to perform a duty imposed by law. However, the mere fact that a suit is brought in the form of an action for *manda-mus* will not prevent the Immunity Act from barring its commence-ment in the circuit court where the case involves determination of ownership of property in which the State of Illinois claims an interest. (See *Gordon v. Department of Transportation* (1982), 109 Ill. App. 3d 1071, 1076, 441 N.E.2d 904, *aff'd* (1983), 99 Ill. 2d 44, 457 N.E.2d 403.) In *Gordon*, the State claimed ownership of the subject property by conveyance or common-law dedication, through a quitclaim deed. The plaintiff claimed ownership by adverse possession and sought a writ of *mandamus* compelling the State to commence condemnation proceedings when the State built a bridge on part of the property. The supreme court affirmed the decision of this court that such an action could not be brought in the circuit court. *Gordon v. Depart-ment of Transportation* (1983), 99 Ill. 2d 44, 457 N.E.2d 403.

■ In the instant case, defendants interposed as a defense in this action for *mandamus* that the State had a property interest for which it was entitled to receive compensation prior to issuance of a permit. Defendants cited no authority for the proposition that possession of a property interest necessarily authorized the Department to condition issuance of a permit on receipt of compensation. Nonetheless, plaintiff has not questioned the materiality of the issue of the State's property rights, but rather has maintained that the State never acquired the asserted property right. As such, the existence of a property right in the State became the central issue in this case. As the property of the State is involved, the State is directly and adversely affected by the suit, and the action is one against the State. (See *Sass*, 72 Ill. 2d at 491, 381 N.E.2d at 977.) The circuit court was without subject-matter jurisdiction to resolve this issue.

In limited circumstances only, the circuit court has been allowed to resolve a claim by the State of an interest in property. (See, *e.g.*, *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 475 N.E.2d 863; *Flick v. Kramer* (1987), 151 Ill. App. 3d 836, 503 N.E.2d 811.) Such circumstances are not present here.

In *Herget National Bank v. Kenney* (1985), 105 Ill. 2d 405, 475

N.E.2d 863, the interest asserted by the State, an irrevocable license to flood a portion of the plaintiff's land, was not claimed pursuant to a written instrument of conveyance as was the case in *Sass* and *Gordon* and is the case here. Record title was continuously held by plaintiff and its predecessors. Further, the supreme court in *Herget National Bank* found there had been a physical invasion and taking of the property by the State which under article I, section 15, of the Illinois Constitution (Ill. Const. 1970, art. I, §15) required just compensation to be determined by a jury. *Herget National Bank*, 105 Ill. 2d at 410-11, 475 N.E.2d at 865.

*Flick v. Kramer* (1987), 151 Ill. App. 3d 836, 503 N.E.2d 811, is distinguishable as, in that case, while both the State and the plaintiff claimed record title to the property in question, the plaintiff had occupied the property for approximately 50 years. In any event, we find that the instant case is governed by *Sass* and *Gordon* and that the circuit court was without subject-matter jurisdiction over this cause.

We next consider whether, as the court below found, irrespective of whether the circuit court otherwise had jurisdiction, jurisdiction was obtained pursuant to the payment of money "under protest." Plaintiff contends that following the payment, the circuit court obtained jurisdiction to determine the proper disposition of the money pursuant to section 2a of the State Officers and Employees Money Disposition Act (Ill. Rev. Stat. 1987, ch. 127, par. 172).

Section 2a provides:

"§2a. Every officer, board, commission, commissioner, department, institute, arm or agency to whom or to which this Act applies is to notify the State Treasurer as to money paid to him, her or it under protest as provided in Section 2a.1 and the Treasurer is to place such money in a special fund to be known as the protest fund. At the expiration of 30 days from the date of payment the money is to be transferred from the protest fund to the appropriate fund in which it would have been placed had there been payment without protest unless the party making that payment under protest has filed a complaint and secured within that 30 days a temporary restraining order or a preliminary injunction, restraining the making of that transfer and unless, in addition, within that 30 days, a copy of the temporary restraining order or preliminary injunction has been served upon the State Treasurer and also upon the officer, board, commission, commissioner, department, institute, arm or agency to whom or to which the payment under protest was made, in which case such payment and such other payments as

are subsequently made under notice of protest, as provided in Section 2a.1, by the same person, the transfer of which payments is restrained by such temporary restraining order or preliminary injunction, are to be held in the protest fund until the final order or judgment of the court. The judicial remedy herein provided, however, relates only to questions which must be decided by the court in determining the proper disposition of the moneys paid under protest." Ill. Rev. Stat. 1987, ch. 127, par. 172.

Defendants contend that this provision is applicable only to tax payments or other charges the nonpayment of which would subject an individual to penalties. Plaintiff responds that the language of the provision is broad and applies to any payment of money to a State officer. There appear to be no reported cases addressing the issue.

Defendants additionally maintain that even if section 2a could apply to the type of payment involved in this case, the payment did not confer jurisdiction in the instant case because resort to section 2a was pursuant to agreed orders which the circuit court was without jurisdiction to enter. We agree.

■ Section 2a provides a limited procedure for determining rights to money paid under protest. The agreed order entered October 22, 1987, recites that it represents "an agreement concerning the conduct of certain affairs preliminary to a final resolution of all matters presented in this cause." In fact, the agreed order goes beyond mere preliminary matters and is, in substance, a partial settlement of the case, reserving certain issues for adjudication. Pursuant to this settlement, the Department agreed to issue a temporary permit allowing construction of the driveway. The settlement thus eliminated the issue of whether defendants were under a clear duty to validate and allow work to commence under the previously issued permit. This issue was central to the complaint seeking a writ of *mandamus* and was not merely a preliminary matter.

Under this settlement, plaintiff paid $244,000, and the parties reserved for determination by the court the issue of whether the Department was entitled to retain all or any part of the $244,000 payment. We do not believe this payment made pursuant to a settlement can fairly be construed as a payment under protest pursuant to section 2a. Moreover, as defendants point out, jurisdiction could not arise from a payment made pursuant to a settlement which the circuit court had no jurisdiction to enter. Plaintiff maintains that the situation following entry of the agreed order was no different than if the original action had been dismissed and an action was subsequently

pursued under section 2a. We disagree. Outside of the agreed order, there was no occasion for the payment as the Department had cancelled the permit and had not renewed its demand for $244,000. We cannot speculate that the agreement embodied in the settlement, which arose in the context of pending litigation, would have been reached had the suit been dismissed.

Moreover, we do not believe that even if plaintiff had pursued this action at the outset in accordance with section 2a, the circuit court would have jurisdiction to adjudicate the issue of the State's interest in the subject property. Section 2a creates a statutory remedy for the recovery of money paid to State officials. Nothing in this provision purports to supersede the Immunity Act's limitation of the circuit court's jurisdiction. While plaintiff notes that cases under this provision have been litigated in the circuit court, plaintiff fails to identify these as cases implicating the considerations of the Immunity Act. Clearly, the typical case involving tax payments under protest (see *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 49, 426 N.E.2d 844) will not involve determination of the State's interest in property, as does the instant case.

For the foregoing reasons, the judgment of the circuit court of Lake County is reversed.

Reversed.

McLAREN and NASH, JJ., concur.