THE ILLINOIS GLASS COMPANY, Appellant, *vs.* THE CHI-
CAGO TELEPHONE COMPANY, Appellee.

*Opinion filed June 18, 1908.*

1. TELEPHONE COMPANIES—*improved service must be furnished
at rates fixed by ordinance for old service.* Where the rates to be
charged for telephones are fixed by the ordinance granting the tel-
ephone company's license the company is bound to furnish any im-
proved service or equipment adopted by it to its customers at the
rates so prescribed, and it cannot legally demand a greater rate. ·

2. SAME—*customer voluntarily agreeing to pay illegal rate can
not recover the excess.* A customer of a telephone company who,
after negotiations for improved service, deliberately and without
fraud or misrepresentation of fact enters into a contract to pay
for such service a price greater than the company could legally
charge, and who carries out his contract and makes his payments
for a period of five years with full knowledge of the facts and
without objection, cannot recover the excess from the company. ·

3. ASSUMPSIT—*rule requiring payment to be compulsory to jus-
tify its recovery applies to ·public service corporations.* The rule
that money paid under a claim of right to the payment, with full
knowledge of all the facts by the party making the payment and
without fraud or misrepresentation or mistake of fact, cannot be
recovered back upon the ground that the claim was unlawful, un-
less the payment was made under circumstances amounting to com-
pulsion, applies to payments made to a public service corporation.

4. SAME—*what is necessary to render payment compulsory.* To
render a payment compulsory such pressure must be brought to
bear upon the person paying as to interfere with the free enjoy-
ment of his rights of person or property, and the compulsion must
furnish the motive for making the payment; and proof that one
party was under no legal obligation to pay money and that the
other had no right to receive it is of no consequence, unless the
payment was compulsory in the sense of depriving the party pay-
ing of his free will.

5. SAME—*rule forbidding recovery of illegal taxes voluntarily
paid does not rest upon grounds peculiar to taxation.* The rule
forbidding the recovery of illegal taxes voluntarily paid does not
rest upon any grounds peculiar to the character of the demand as
being for the revenue of the .government, and the rule is appli-
cable to all cases of voluntary payment of illegal demands.

6. SAME—*protest is best evidence of compulsion, but if protest
is useless it is unnecessary.* Ordinarily, protest is the best evi-

dence of compulsion of payment, but where protest would be useless it is unnecessary; and while compulsion may appear from the circumstances without any protest or expression of unwillingness to pay, yet such fact has no effect upon the rule that a payment which is in fact voluntary cannot be recovered back.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding.

MAYER, MEYER & AUSTRIAN, for appellant:

A telephone company is engaged in a public service and is a common carrier. *People* v. *Telegraph Co.* 166 Ill. 15; *People* v. *Railroad Co.* 178 id. 594; *Inter-Ocean Co.* v. *Associated Press,* 184 id. 438.

Appellee was bound, in law, to furnish appellant the best and most approved service which it had adopted, at the rate prescribed by its ordinance. *People* v. *Telephone Co.* 220 Ill. 238; *Telephone Co.* v. *Manufacturers' Ass.* 106 Ill. App. 54.

Cases where illegal taxes were paid and sought to be recovered back are distinguishable and are not in point. *Transportation Co.* v. *Sweetzer,* 25 W. Va. 434; *Steamship Co.* v. *Young,* 89 Pa. St. 186; *Mariposa Co.* v. *Bowman,* Deady, 228; *Peters* v. *Railroad Co.* 42 Ohio St. 275; *Town* v. *Ackerman,* 46 Ind. 552; *Allentown* v. *Saeger,* 20 Pa. St. 421; *Taylor* v. *Board of Health,* 31 id. 73; *Town Council* v. *Burnett,* 34 Ala. 400.

Tax cases are also distinguishable from cases between private individuals. *Allentown* v. *Saeger,* 20 Pa. St. 421; *Mariposa Co.* v. *Bowman,* Deady, 228; *Manning* v. *Poling,* 114 Iowa, 20.

If a public service corporation exacts greater charges than those fixed by law, as the parties do not stand on an equality the payment of such charges will, as matter of law,

be regarded and treated as involuntary, and the excess may be recovered back regardless of the ordinary tests of duress. Such a charge is similar to an overcharge by a public official and is against public policy.

Where the rates chargeable by a common carrier are fixed by law, a payment of a charge in excess thereof is considered, in law, precisely as though made under duress, and the payor has the absolute right to recover back the excess. *Railway Co.* v. *Steiner,* 61 Ala. 559; *Railroad Co.* v. *Wilson,* 132 Ind. 517; *Heiserman* v. *Railway Co.* 63 Iowa, 732; *Gas Co.* v. *Anthony,* 58 N. E. Rep. 868; *Pingree* v. *Gas Co.* 107 Mich. 156; *Peters* v. *Railroad Co.* 42 Ohio St. 275; *Railway Co.* v. *Robertson,* 2 L. R. Ire. 548; *Parker* v. *Railway Co.* 7 M. & Gr. 253; *Canal Co.* v. *Nelssen,* 85 Pac. Rep. 117; *Light Co.* v. *Gaines,* 49 S. W. Rep. 462.

An overcharge by a common carrier is governed by precisely the same principles as an overcharge by a public official. *Edmonds* v. *Abeel,* 20 Hun, 441; *Navigation Co.* v. *Bank,* 6 How. 344; *Lumber Co.* v. *Railroad Co.* 53 S. E. Rep. 823; *County of LaSalle* v. *Simmons,* 5 Gilm. 513.

Whenever a public official charges more than a legal rate for the performance of a public duty the excess may be recovered back. The doctrine of duress has absolutely no application. *Morgan* v. *Palmer,* 2 B. & C. 729; *Hooper* v. *Mayor,* 56 L. J. Q. B. 457; *Swift* v. *United States,* 111 U. S. 22.

Appellant may recover on the principle which at common law allowed a recovery for usury. There the doctrine of duress has no application. Endlich on Building Associations, (2d ed.) sec. 369; *Graham* v. *Railway Co.* 53 Wis. 473; *County of LaSalle* v. *Simmons,* 5 Gilm. 513.

Even where the doctrine of duress is applicable, the test is not whether plaintiff was under an immediate necessity for the thing paid for, but merely whether the payment was necessary in order to procure the performance by the payee of his legal duty. *Emery* v. *Lowell,* 127 Mass. 138; *Shaw*

v. *Woodcock,* 7 B. & C. 73; Wald's Pollock on Contracts, (3d ed.) 730, 731.

HOLT, WHEELER & SIDLEY, (JOHN J. HERRICK, of counsel,) for appellee:

It is not contrary to equity and good conscience to retain money paid voluntarily, within the meaning of the law. *Regan* v. *Baldwin,* 126 Mass. 485; *Brisbane* v. *Dacres,* 5 Taunt. 143; *Robertson* v. *Frank Bros.* 132 U. S. 17.

The doctrine *ex æquo et bono* does not furnish the test of recovery, in the sense that every payment which ought not to have been received may be recovered. It must further appear that the payment was compulsory. *McGregor* v. *Railway Co.* 35 N. J. L. 89; *Walser* v. *Board of Education,* 160 Ill. 272; *Otis* v. *People,* 196 id. 542.

If the payment was voluntary there is a strong equity against requiring its re-payment by one who has received and expended it in reliance upon the payor's acquiescence. *Brisbane* v. *Dacres,* 5 Taunt. 143; *Kenneth* v. *Railroad Co.* 15 Rich. L. 284; *Town Council* v. *Burnett,* 34 Ala. 404.

Inequality is one ingredient of moral duress, but its effect upon the right of recovery depends upon the circumstances of the case, and upon whether the inequality and accompanying necessity are reasonably sufficient to influence, and actually do influence, the unwilling mind of the payor to make the illegal payment. *Robertson* v. *Frank Bros.* 132 U. S. 17; *Hackley* v. *Headley,* 45 Mich. 569; 2 Page on Contracts, sec. 810; *Railway Co.* v. *Steiner,* 61 Ala. 559; 1 Wharton on Contracts, sec. 149.

The controlling test of compulsory payment is interference with the exercise of free will. *Astley* v. *Reynolds,* 2 Strange, 915; *Stover* v. *Mitchell,* 45 Ill. 214; *Pemberton* v. *Williams,* 87 id. 15; *Guetzkow* v. *Breese,* 96 Wis. 598; *Beckwith* v. *Frisbie,* 32 Vt. 559; *Bates* v. *Insurance Co.* 3 Johns. Cas. 238; *Chase* v. *Dwinal,* 7 Greenl. 134; *Chamberlin* v. *Reed,* 13 Me. 357; *Ash* v. *McLellan,* 101 id. 17.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On January 4, 1889, an ordinance of the city of Chicago was passed authorizing the appellee, the Chicago Telephone Company, to construct, maintain and operate its lines of telephone wires in said city for twenty years. It was required to file with its acceptance of the ordinance a schedule showing the rates then charged for telephone service, and was prohibited from increasing to its existing or future subscribers the rates so established. The appellee accepted the ordinance and filed its schedule of rates showing that it charged $125 per year for a business telephone within the territory where the office of the appellant, the Illinois Glass Company, was located. Appellant contracted with appellee for a business telephone at that rate and used it for many years, up to October 11, 1897. The telephone so contracted for was known as the "grounded line," and was the kind in use when the ordinance was passed. With the increase of wires and disturbing influences the telephone grew less efficient, and did not give satisfactory service by reason of humming, spluttering and hissing noises, which made it difficult to carry on a conversation. An improved service, known as the "metallic circuit," was devised, which obviated the objection to the grounded line, and when the credit man of appellant complained to appellee of the service he was told that if appellant would procure the improved telephone equipment it would have better service, and that such improved telephone would cost $50 a year additional, or $175 a year. The credit man said that the price was high, but was informed that the service would be better, and he consulted with a general officer of appellant about the advisability of making the contract. He was authorized to do so, and on October 11, 1897, a contract was executed by which appellant was to pay $175 a year, quarterly in advance. The improved telephone was installed in the office

of appellant and appellee rendered bills quarterly in advance for the service, which were paid for the ensuing five years. The amount so paid was $209.97 in excess of the rate fixed by the ordinance, and on July 17, 1903, appellant brought this suit in the superior court of Cook county against appellee to recover that amount. The declaration was in the common counts, to which the defendant pleaded the general issue and the five years' Statute of Limitations. There was a trial by jury, and at the conclusion of the plaintiff's evidence the court, on motion of the defendant, directed a verdict in defendant's favor. A verdict was returned under that direction, and the plaintiff's motion for a new trial was overruled and judgment was entered against it for costs. The Branch Appellate Court for the First District affirmed the judgment on appeal and granted a certificate of importance, under which this further appeal was prosecuted.

All the evidence in the case was introduced by the plaintiff, and it was thereby proved that the contract was entered into by it deliberately, after negotiations and with full knowledge of all the facts and conditions; that it was performed by the defendant according to its terms, and that the payments made under it, quarterly, for the period of five years, were made without any objection or protest or manifestation of unwillingness to pay the amount agreed to be paid.

In order to be relieved from its contract and to recover back a portion of the moneys paid, the plaintiff assumed the burden of establishing, by the evidence, facts from which the law would draw the conclusion that the defendant had received money which in justice belonged to the plaintiff and ought to be returned. There was neither fraud, misrepresentation nor mistake of fact, and it is not claimed that the payments were made upon a consideration which subsequently failed, but it is insisted that the fact of over-payment, alone, was sufficient to sustain the action. The fact of over-payment was established and is not disputed.

The defendant was bound to furnish any improved service or equipment adopted by it to its customers within the territory where the plaintiff's office was located, at the rate of $125 a year. (*People* v. *Chicago Telephone Co.* 220 Ill. 238.) Counsel do not seriously contend that the mere fact of over-payment would authorize a recovery as between private individuals, or between individuals and municipal corporations or public officials collecting taxes, or generally in other relations, but the burden of their argument is that a distinction has been observed by other courts, and should be observed by this court, where the payment is made to a corporation rendering public service, such as a railroad or telephone corporation. Such a distinction has never been made in any case in this court, and the real question here is, whether such a distinction ought to be recognized and a recovery be permitted merely because of a payment in excess of that which defendant had a legal right to demand.

It has been a universally recognized rule that money voluntarily paid under a claim of right to the payment and with knowledge of the facts by the person making the payment cannot be recovered back on the ground that the claim was illegal. It has been deemed necessary not only to show that the claim asserted was unlawful, but also that the payment was not voluntary; that there was some necessity which amounted to compulsion, and payment was made under the influence of such compulsion. The ancient doctrine of duress of person, and later of goods, has been much relaxed, and extended so as to admit of compulsion of business and circumstances, and perhaps a telephone corporation having a system in general operation and connected with customers and other business houses might reasonably influence a business house to make an unwilling payment of an amount illegally demanded, which would make the payment compulsory. The telephone has become an instrument of such necessity in business houses that a denial of its advantages would amount to a destruction of the busi-

ness.  In the case of *County of LaSalle* v. *Simmons,* 5 Gilm.
513, a payment made for business reasons was declared
by the court to be, in law and fact, a compulsory payment.
The county commissioners had power to grant ferry li-
censes and to require payment therefor not exceeding $100.
They gave notice that they would grant a certain ferry li-
cense to the person who would donate the largest amount
to the county, and the plaintiff, who had previously kept the
ferry, offered $500, which was accepted.  It was held that
he was compelled, by the force of circumstances over which
he had no control, to advance a large sum of money to pro-
tect his business and that he could recover it back.  In this
case there was undoubted inequality of situation between
the parties, but there was no evidence tending to show that
the plaintiff was in any manner overcome by any necessity
amounting to compulsion.  The proposition for an im-
proved service at an increased price was presented and ac-
cepted without objection, and there was entire acquiescence
on the part of the plaintiff for a term of years thereafter.

From the nature of the question no very precise rules
can be laid down as to what will constitute a compulsory
payment, but the general principles are illustrated by a num-
ber of cases.  The principles were applied in two cases be-
tween the city of Chicago and owners of property who had
paid illegal special assessments.  In *Bradford* v. *City of
Chicago,* 25 Ill. 411, it was held that a property owner
could recover an assessment for the purpose of opening a
street where the assessment was void and payment was
made to a collector who had a warrant in his hands author-
izing him to levy upon and sell the goods and chattels of
the property owner.  On the other hand, in *Elston* v. *City
of Chicago,* 40 Ill. 514, where the assessment was void but
the payment was made when there was no precept or execu-
tion in the hands of an officer by which the collection of
the assessment could be enforced, it was held that the pay-
ment was not compulsory.  The doctrine of that case, which

is adhered to by practically all courts, is that a payment made with full knowledge of all the facts and circumstances, and in ignorance only of legal rights, cannot be recovered back. In order to render a payment compulsory, such a pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, and the compulsion must furnish the motive for the payment sought to be avoided. Proof that one party is under no legal obligation to pay the money and that the other has no right to receive it is of no consequence unless the payment was compulsory, in the sense of depriving the one making the payment of the exercise of his free will. The rules were applied as between shipper and common carrier in the case of *Chicago and Alton Railroad Co.* v. *Chicago, Vermilion and Wilmington Coal Co.* 79 Ill. 121, where the coal company had no other outlet for its coal, and the court said it was a case of life or death with the coal company, and it was bound to accede to any terms the railroad company might impose. In that case there was a controlling necessity arising from the circumstances under which the money was demanded and paid, and it was held that the shipper could recover from the railroad company the excess of freight over that which it was entitled to exact. There was no hint that there is any peculiar rule or test as between a public service corporation and one for whom the service is rendered. In *Pemberton* v. *Williams,* 87 Ill. 15, the assignee of a purchaser of land who had contracted to sell the land to another was compelled to pay the original vendor more than was due, in order to get a deed to satisfy his vendee, and made the payment under protest. That was a case of business necessity, and it was held to be a fair question for the jury whether the payment was not involuntary and made under a sort of moral duress. In *Gannaway* v. *Barricklow,* 203 Ill. 410, an administrator paid money falsely represented to be for back taxes of his intestate, and it was contended that the tax was voluntarily paid.

The court said that a tax voluntarily paid, where there was no mistake of fact, could not be recovered back, but that the payment was made in that case on account of fraud and imposition, where no tax was ever levied or extended, and was not voluntary. In *City of Chicago* v. *Northwestern Mutual Life Ins. Co.* 218 Ill. 40, an owner of property was adjudged to have rightfully recovered from the city of Chicago water rates unlawfully exacted and paid under protest to prevent the city from carrying out a threat to shut off the water supply. The payment was deemed compulsory. In *Yates* v. *Royal Ins. Co.* 200 Ill. 202, it was held that although a statute imposing a tax was unconstitutional and the tax illegal, it could not be recovered back if it was paid voluntarily. It was considered of no importance that the tax was illegal where it was paid under a mistake as to legal rights but with knowledge of all the facts.

Those cases clearly show the rules of law respecting voluntary and compulsory payments and their application to different conditions. They were applied to a common carrier, and to the city occupying the same position as a public service corporation in supplying water to the inhabitants of the city,—a public service performed by the city in the exercise of a private and not a governmental function. (*Wagner* v. *City of Rock Island,* 146 Ill. 139.) It was not thought that a mere over-payment to a railroad company carrying coal nor to the city for supplying water would authorize a recovery, but it was assumed that there must be an added element of compulsion.

Much effort is made to show that the rule forbidding a recovery of illegal taxes voluntarily paid rests upon peculiar grounds distinguishing cases of that kind from this one, but if that were so it would be of no avail, since the rule is not confined to tax cases. However, we are not able to see any valid ground for declaring one rule in tax cases and a different rule in other cases. Counsel say that tax cases are distinguished by the facts that taxes are essential to the

existence of the government; that the tax-payer necessarily derives some benefit from the tax that he has paid; that the collector of the tax acts as an agent of the government, and if the tax is recovered back the public funds are diminished. These propositions are all true, but we do not see how they affect the question. The government must be supplied with revenue, but that fact affords no justification for injury to a citizen or unjust or illegal exactions. The plaintiff derived some benefit from the money which it paid to the defendant,—in fact, all the benefit which was expected or that the contract provided for,—and we do not see that it makes any difference whether money is received by an agent for his principal or by the principal himself. If a tax is recovered back the public funds are diminished, but we do not see any ground for saying that the law would make the recovery of money voluntarily paid to a tax official impossible and at the same time make a recovery easy and certain if the money voluntarily paid was for telephone service. Not only has no distinction of that kind been made by this court, but we do not find among the cases cited by counsel any which contain no element of compulsion. The circumstances of different cases are so diverse and the nature of the question is such that, as before stated, no very precise rules can be laid down which will fit every case. Ordinarily, protest is the best evidence of compulsion or unwillingness to pay, and it is usually expected where the payment is made to one who has a right to make terms with the payor, but where protest would be useless it is superfluous. Examples are to be found in cases cited by counsel where a railroad company fixes its own rates and goods are tendered to an agent who has no authority to make any change in such rates and where a protest would be entirely useless. Compulsion may appear from the circumstances and not from any expression of unwillingness or protest against a payment; but that has no effect on the rule that a payment which is voluntary, and not compulsory,

234—35

cannot be recovered back. Plaintiff was chargeable with knowledge that the defendant could not string its wires in the streets of the city and carry on its business without a license or grant from the city, which must be by ordinance, and the license was given by ordinance, upon terms and conditions for its enjoyment, and the ordinance is a local law of the city. Although the defendant could not legally require payment of more than $125 per year for the business telephone and the plaintiff was not legally bound to pay more, a larger sum was voluntarily paid without fraud, mistake of fact or other ground for annulling the contract. The court did not err in directing a verdict.

Complaint is made of rulings of the court on the admission of evidence, but as there was no ground for a recovery the rulings could not have been harmful and therefore do not require attention.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*