No. 3-05-0774

Filed February 16, 2007.

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2007

| | | |
|---|---|---|
| SUE RAMIREZ, individually and on behalf of a class of similarly situated individuals, | ) ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) ) | No. 01-L-385 |
| SMART CORPORATION, a California corporation authorized to do business in the State of Illinois, | ) ) ) ) ) ) | Honorable Joe Vespa, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE LYTTON delivered the opinion of the court:

_____

Plaintiff Sue Ramirez obtained copies of her hospital medical records from Smart Corporation, a company that provides record retrieval and copying service. She later filed a four-count complaint against Smart, alleging that the company overcharged hospital patients for such services and requesting class action certification. The trial court granted summary judgment on all four counts and denied certification of the class. We affirm in part, reverse in part and remand for further proceedings.

In 1993, Pekin Hospital contracted with Smart to respond to

requests from patients and their agents for copies of patient records. When a request was received, the hospital would turn it over to Smart which maintained its own employees and copying machine on the hospital premises. A Smart employee retrieved the patient's records from the record storage area and copied them. The Smart employee then returned the file to a hospital employee who returned the records to the storage area. After copying the patient's records, Smart delivered the records to the patient, along with a bill for the copying charges.

Ramirez sustained injuries and was treated in the emergency room at Pekin Hospital. Shortly thereafter, Ramirez retained the law firm of Hamm & Hanna, Ltd. and, in January 1999, filed a workers compensation claim. To prepare the claim, attorney Robert Hanna sent a letter to the hospital requesting copies of Ramirez' records of her treatment. Smart responded to the request and sent her hospital records, which totaled six pages, with a bill for $34.78 to Hanna's office. The charges on the bill were itemized as follows:

"Basic fee          $15.00

Per page charge $1.00 (x 6)

Photocopy Charge                    $21.00

Facility Retrieval/Search Fee $10.00

Shipping/Handling               $3.78"

A cover letter stated:

"Smart will continue to copy records that you request from this facility or, if you prefer, you may make arrangements for one of your own personnel or an independent copy service to copy the requested records. However, you must obtain prior permission and schedule an appointment with the medical records department in advance."

Hanna's secretary, Diana McPherson, reviewed the bill and authorized payment. Hanna's office paid the bill without objecting to the amount or nature of the charges. Ramirez did not review the invoice prior to the firm's payment of the bill.

In an affidavit, Brenda Bouris, a hospital supervisor responsible for records, stated that the hospital never permitted patients or patients' attorneys to personally handle their own medical records or copy the records themselves. While the hospital was under contract with Smart, the only way a patient could obtain a copy of the patient's records was for Smart to perform the copying.

Ramirez filed a complaint "seeking to represent a class of all persons in Illinois who had been victimized by Smart's excessive charges to obtain copies of their own records." Count I alleged that Smart charged an unreasonable price under the common law. Count II contended that Smart violated the Inspection of Hospital Records Act (Hospital Records Act) (735 ILCS 5/8-2001 (West 1998)).

Count III alleged that Smart's fees were deceptive and misleading and violated the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 et seq. (West 1998)). Count IV claimed that Smart was unjustly enriched because of the excessive fees.

Ramirez also filed a motion for class certification. The court denied the request, finding that Ramirez was not an adequate representative of the class because Hanna's office, not Ramirez, had reviewed the Smart invoice and paid the bill.

Smart moved for summary judgment on all counts. The court granted judgment in favor of Smart, concluding that Ramirez' claims were barred by the voluntary payment doctrine. The trial court also held that Ramirez was precluded from suing for damages under the Hospital Records Act because the Act contains an express right of action compelling a hospital to permit copying of records with an award of attorney fees. Finally, the court concluded that Smart's charges were not deceptive or unfair under the Consumer Fraud Act.

## I. Summary Judgment

Summary judgment is a drastic method of disposing of litigation. It is proper only when the pleadings, depositions, and admissions clearly demonstrate that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004); Pennsylvania Life

4

Insurance Co. v. Pavlick, 265 Ill. App. 3d 526 (1994). In reviewing an order for summary judgment, all of the facts must be viewed in a light most favorable to the nonmoving party. Eyrich v. Johnson, 279 Ill. App. 3d 1067 (1996). Thus, on examination of the record, if it can be fairly stated that a triable issue of fact exists, the motion should be denied. Bellmer by Bellmer v. Charter Security Life Insurance Co., 140 Ill. App. 3d 752 (1986). When a trial court grants summary judgment, we review de novo. Courson ex rel. Courson v. Danville School District No. 118, 301 Ill. App. 3d 752 (1998).

## A. Voluntary Payment Doctrine

Ramirez claims that the trial court erred in granting summary judgment on the basis that her claims were barred by the voluntary payment doctrine. Ramirez argues that the doctrine does not apply to this case because she had no "reasonable alternative" for obtaining her medical records from any other source.

Under the voluntary payment doctrine, absent fraud, duress or mistake of fact, money voluntarily paid on a claim of right to the payment cannot be recovered on the ground that the claim was illegal. King v. First Capital Financial Services Corp., 215 Ill. 2d 1 (2005). The voluntary payment doctrine applies to any cause of action which seeks to recover payment of a claim of right, whether that claim is premised on a contractual relationship or a statutory obligation. Smith v. Prime Cable of Chicago, 276 Ill.

5

App. 3d 843 (1995). Though payment under protest is the typical means by which a plaintiff signifies his contention that a tax or charge is improper, the absence of such a protest does not, without more, require the application of the voluntary payment doctrine. Getto v. City of Chicago, 86 Ill. 2d 39 (1981). It must also be shown that the plaintiff had knowledge of the facts upon which to base a protest and that the payments were not made under duress or compulsion. Getto, 86 Ill. 2d at 48-49.

1.

In this case, Ramirez does not dispute that she paid the invoices without protest. However, she claims that the exception of duress has been adequately set forth and raises a question of fact sufficient to defeat a motion for summary judgment.

To defeat the voluntary payment doctrine on the basis of duress, the plaintiff must show that the payment was not voluntary because there was some necessity that amounted to compulsion and that the payment was made under the influence of that compulsion. King, 215 Ill. 2d 1. Whether the plaintiff had to protest the charge is irrelevant to the issue of duress. Geary v. Dominick's Finer Foods, Inc., 129 Ill. 2d 389 (1989). A plaintiff must prove duress by demonstrating both that the service is a necessity and that no reasonable alternative exists. Geary, 129 Ill. 2d 389. To establish that "no reasonable alternative exists," plaintiffs need not plead that they attempted to obtain the product or services

6

elsewhere or that they had actual knowledge of defendant's policy of refusal to provide the product or services if the charge was not paid. Geary, 129 Ill. 2d 389. Moreover, plaintiffs do not have to plead an actual threat; implied duress is sufficient. See Geary, 129 Ill. 2d 389; Getto, 86 Ill. 2d 39; Illinois Glass v. Chicago Telephone Co., 234 Ill. 535 (1908). The issue of duress and compulsory payment generally is one of fact to be judged in light of all the circumstances surrounding the transaction. Smith, 276 Ill. App. 3d 843 (1995).

As set forth above, there are two prongs to the application of the duress exception: necessity and the lack of a reasonable alternative. Smart does not dispute that Ramirez' medical records were a necessity. Thus, the sole issue is whether Ramirez had a reasonable alternative of obtaining her medical records without paying Smart's charges.

In her complaint, plaintiff alleged that to obtain the requested copies of her medical records, she had to pay the charges to Smart. She claimed that those records were not available to her from any other source without payment of the charges. She also submitted an affidavit which stated that the hospital did not permit patients or their attorneys to copy the records themselves but rather required them to use Smart. These allegations are sufficient to raise a material issue of fact regarding duress.

Smart claims that Ramirez' failure to protest the charges

7

prior to payment and her failure to seek access to the records directly from the hospital precludes application of the duress exception. However, courts have generally held that plaintiffs are allowed to use duress as an exception to the voluntary payment doctrine regardless of protest or actual denial of the product or services. See Geary, 129 Ill. 2d at 407 (citing Getto, 86 Ill. 2d 39, and Illinois Glass, 234 Ill. 535). Ramirez does not have to allege that she actually tried to obtain her records without paying the charge and that the hospital or Smart refused to provide them. See Getto, 86 Ill. 2d at 53 (courts will not require plaintiff to perform a useless act to demonstrate duress); Geary, 129 Ill. 2d at 400 (taxpayer claiming tax on tampons was illegal did not have to allege that they tried to purchase items without paying tax at another retail store). Even if Ramirez had attempted to obtain the records through the hospital, Bouris's affidavit strongly suggests that she would have been denied access and referred to Smart. Thus, viewing the evidence liberally in favor of Ramirez, factual questions exist regarding the availability of reasonable alternative services.

Smart argues that the holding in Harris v. Chartone, 362 Ill. App. 3d 878 (2005), requires the application of the voluntary payment doctrine. We disagree.

In Harris, the plaintiffs alleged that defendant's company was charging an unreasonable fee for copying medical records. The

8

plaintiffs' complaint did allege that a named party had gone to the hospital to inspect the medical records and "was not offered an opportunity to see the records." The plaintiffs did not allege that they had made a request in writing as required under section 8-2001 of the Hospital Records Act. The appellate court applied the voluntary payment doctrine to dismiss the complaint, noting that "plaintiffs' allegations do not show that the plaintiffs were compelled to accept the records from the defendants and pay the defendants' invoices." Harris, 362 Ill. App. 3d at 884.

Unlike the plaintiffs in Harris, Ramirez provided an affidavit signed by hospital personnel which verified her allegation that she would have been compelled to accept the records from Smart. Plaintiff's allegations of duress supported by affidavit are sufficient to create a material issue of fact.

2.

Alternatively, we also consider whether the statute requiring hospitals to provide medical records to patients precludes the application of the voluntary payment doctrine. See Pratt v. Smart Corporation, 968 S.W. 2d 868 (Tenn. App. 1997). Section 8-2001 of the Hospital Records Act obligates every hospital in Illinois to enable patients to obtain copies of their medical records. 735 ILCS 5/8/2001 (West 1998). The purpose of the statute is to allow patients access to their medical records in a timely manner. See Rodgers v. St. Mary's Hospital, 149 Ill. 2d 302 (1992).

9

The statute leaves implementation of that duty to those who are most intimately involved. It has been generally accepted that hospitals can compel a patient to obtain their records by paying an outside copying service. Clay v. Little Company of Mary Hospital, 227 Ill. App. 3d 175 (1995). In Clay, the court construed the statute to imply a reasonableness standard in both the charges to the patient as well as the manner of photocopying, finding that the intent of the statute could not be otherwise. Thus, in order to implement the Hospital Records Act, hospitals can use copying services, but they must act reasonably in its implementation. Clay, 227 Ill. App. 3d at 180. We agree with Clay that a proper construction of the statute necessarily implies reasonableness in the billing of patients for the service. Clay, 227 Ill. App. 3d at 180.[1]

In Pratt, the court held that a patient could recover excessive charges for copies of her medical records that she had remitted to Smart "but which were in derogation of the public

_____

[1] We note that section 8-2001 of the Hospital Records Act was substantially amended in September of 2001. The statute now imposes specified monetary limits on the various charges a hospital may impose, including the costs of independent copy service companies, for "reasonable expenses." 735 ILCS 5/8-2001 (West 2002) (amended by P.A. 92-228, eff. September 1, 2001).

10

policy behind a specific statute." <u>Pratt</u>, 968 S.W. 2d at 872. In that case, the court found that Smart's alleged actions violated the policy established by a legislative enactment requiring that the charges for such photocopying services be reasonable. Thus, the company's conduct was subject to review by the courts even though it was fully consummated. <u>Pratt</u>, 968 S.W. 2d 868.

The purpose of section 8-2001, as construed, leads us to agree with <u>Pratt</u> that, like Tennessee, this state has an interest in transactions that violate "statutorily-defined public policy." <u>Pratt</u>, 968 S.W. 2d at 872. The effect of such transgressive acts, generally speaking, is that the voluntary payment rule will not be applicable. <u>Pratt</u>, 968 S.W. 2d 868; see, for example, <u>Great Lakes Mortgage Co., v. Collymore</u>, 14 Ill. App. 3d 68, 71 (1973) (statute in derogation of common law abrogates common law rule to extent expressed by words of the statute or necessarily implied from what is expressed). Here, if proved, Smart's allegedly excessive charges might well violate the intent of the Hospital Records Act, i.e., that a party must act reasonably when fulfilling its mandate. See <u>Clay</u>, 277 Ill. App. 3d 175. Therefore, the voluntary payment doctrine would not impede Ramirez' cause of action and does not provide an adequate basis for sustaining the trial court's grant of summary judgment.[2]

---

[2]

In her complaint, Ramirez alleges that Smart's charges were

11

3.

We find that another exception to the voluntary payment rule, mistake of fact, exists in this case. While a mistake of law is sufficient to bar plaintiff's recovery, a mistake of fact is not. Kerr Steamship Co. v. Chicago Title & Trust Co., 120 Ill. App. 3d 998 (1983); Hartford v. Doubler, 105 Ill. App. 3d 999 (1982). The voluntary payment doctrine provides that, absent fraud, misrepresentation or mistake of fact, money that is voluntarily paid under a claim of right to the payment and with full knowledge of the facts by the payer cannot be recovered unless the payment

---

unfair and deceptive under the Consumer Fraud Act. The intent and purpose of that Act lend additional support to our refusal to apply the voluntary payment doctrine to this case. See 815 ILCS 505/1 et seq. (West 1998). The Consumer Fraud Act is a regulatory and remedial statute intended to give broad protection to consumers, borrowers, and business people against fraud, unfair methods of competition, and other unfair and deceptive business practices. 815 ILCS 505/2 (West 1998); Robinson v. Toyota Motor Credit Corp., 201 Ill. 2d 403 (2002); Johnson v. Matrix Financial Service Corp., 354 Ill. App. 3d 684 (2004). The object of the statute is the protection of the public interest. Zazove v. Pelikan, Inc., 326 Ill. App. 3d 798 (2001). Thus, Smart's allegedly excessive charges would violate the fairness requirements of the Consumer Fraud Act as well.

was made as a result of compulsion. <u>Illinois Graphics Co. v. Nickum</u>, 159 Ill. 2d 469 (1994) (noting that a cause of action for the recovery of voluntary payments made because of a mistake of fact has long been recognized). Incomplete knowledge of facts can contribute to the mistake of fact exception to the voluntary payment doctrine. <u>Alexian Brothers Heath Providers Assoc. Inc. v. Humana Health Plan, Inc.</u>, 277 F. Supp. 2d 880 (2003). The determination as to why the payments were made is generally an issue of material fact not properly decided as a matter of law. <u>Cf.</u> <u>Kerr</u>, 120 Ill. App. 3d at 1008 (mistake of fact not properly decided on a motion to dismiss).

In this case, plaintiff alleges that some of the fees charged by Smart were for services provided by the hospital and that she did not know that the itemized fees included charges for services not actually rendered by Smart when she made the payment. In her complaint, Ramirez claims that Smart charged for services that it did not provide and double billed fees for essentially the same services. She also claims, based on McPherson's deposition, that she paid the bill based on the assumption that the charges were for work actually performed by Smart. Plaintiff's allegations indicate that a mistake of fact existed concerning what services she was paying for when she paid the bill. See <u>Illinois Graphics</u>, 159 Ill. 2d at 490 (inferred a mistake of fact claim based on detailed allegations in complaint). In its motion for summary judgment,

13

Smart failed to establish that Ramirez had full knowledge of all the circumstances relating to the charges she agreed to pay. Thus, a genuine issue of material fact exits which precludes summary judgment.

## B. Consumer Fraud Claim

Next, plaintiff argues that the court erred in concluding, as a matter of law, that Smart's conduct was neither deceptive nor unfair under the Consumer Fraud Act.

The Consumer Fraud Act is intended to protect consumers against fraud, unfair methods of competition and other unfair and deceptive business practices. <u>Cripe v. Leiter</u>, 184 Ill. 2d 185 (1998). The policy of the Act is to give broader protection than common law fraud or negligent misrepresentation by prohibiting any "unfair or deceptive acts or practice, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce." 815 ILCS 505/2 (West 1998). The elements of a claim under the Act are (1) a deceptive act or practice by the defendant, (2) the defendant's intent that plaintiff rely on the deception, (3) the occurrence of the deception during a course of conduct involving trade or commerce, (4) actual damage to the plaintiff and (5) proximately caused by

the deception.  <u>Avery v. State Farm Mutual Automobile Insurance</u>, 216 Ill. 2d 100 (2005).  Recovery may be had for unfair as well as deceptive practices.  <u>Saunders v. Michigan Avenue National Bank</u>, 278 Ill. App. 3d 307 (1996).  To be unfair, the defendant's conduct must: (1) offend public policy; (2) be immoral, unethical, oppressive, or unscrupulous; and (3) cause substantial injury to consumers.  <u>Robinson</u>, 201 Ill. 2d 403.  "All three criteria do not need to be satisfied to support a finding of unfairness.  A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." <u>Robinson</u>, 201 Ill. 2d at 418 (<u>quoting</u> <u>Cheshire Mortgage Service, Inc. v. Montes</u>,  612 A. 2d 1130 (Conn 1992)).

In her complaint, Ramirez alleged that Smart engaged in deceptive conduct by "describing fees in an inherently vague and ambiguous manner as to confuse patients into believing that they are being charged for important services provided, when they are not."  Ramirez alleged that Smart charged for services which it did not provide.  The complaint also alleged that patients were charged "for the actual cost of certain services, like shipping and handling, although defendant charged amounts far in excess of the actual costs of such services."  In support of these allegations, Ramirez submitted the affidavit of Hanna's assistant, Diane McPherson.  The affidavit stated that McPherson paid the bill and that she did so believing the invoice represented separate charges

15

for actual costs incurred by Smart.  Ramirez also presented the invoice from Smart which listed a "Basic Fee" of $15.00 in addition to a $1 "Per Page" charge, amounting to a total "Photocopy Charge" of $21.00.  The invoice also included a "Shipping/Handling" fee of $3.78.  The purpose of the basic fee, as well as the other charges, was not disclosed on the invoice, and Smart has offered no evidence to contradict Ramirez' claim that the charges do not represent actual expenses.  The mere recitation of the charges suggests that a reasonable jury could find that the invoice deceptively or confusingly caused consumers to pay these bills based on the reliance that they covered actual expenses.  See Martin v. Heinold Commodities, Inc., 163 Ill. 2d 33 (1994) (failure to disclose actual charges for "foreign service fee" was misleading and deceptive).

At a minimum, a reasonable inference from the limited evidence adduced indicates that Ramirez sufficiently pled a cause of action under the statute.  This cause involves a uniform billing practice that, at this stage of the proceedings, has the potential to be unethical and offend public policy.  Accordingly, we find that there is sufficient evidence to create a genuine issue of material fact as to whether Smart's actions violated the Consumer Fraud Act. See Avery, 216 Ill. 2d 100 (generally, proof of elements of Consumer Fraud Act involve factual questions and determinations). Moreover, our conclusion is consistent with the requirement that

16

the Consumer Fraud Act be construed liberally to promote its purpose. Robinson, 201 Ill. 2d at 417. We therefore reverse the entry of summary judgment against Ramirez on count IV of her complaint.

C.  Hospital Records Act

Ramirez argues that the trial court erred in granting judgment as a matter of law on her claim for damages based on Smart's alleged violation of the Hospital Records Act. She maintains that, contrary to the court's ruling, section 8-2001 of the Hospital Records Act does not preclude a private right of action.

Section 8-2001 of the Hospital Records Act provides as follows:

"Examination of records.  Every private and public hospital shall, upon the request of any patient who has been treated in such hospital and after his or her discharge therefrom, permit the patient, his or her physician or authorized attorney to examine the hospital records *** and permit copies of such records to be made by him or her or his or her physician or authorized attorney.  A request for examination of the records shall be in writing and shall be delivered to the administrator of such hospital.

***

Failure to comply with the time limit requirement of this

17

Section shall subject the denying party to expenses and reasonable attorney fees incurred in connection with any court ordered enforcement of this provision of this Section." 735 ILCS 5/8-2001 (West 1998).

Illinois courts have consistently held that a statute's provision for an express right of action precludes any implied right of action as a matter of law. Fisher v. Lexington Health Care, Inc., 188 Ill. 2d 455 (1999); Metzger v. DaRosa, 209 Ill. 2d 30 (2004); King, 215 Ill. 2d 1. In Metzger, 209 Ill. 2d 30, the supreme court held "where, as here, the legislature has expressly provided a private right of action in a specific section of the statute, we believe the legislature did not intend to imply private rights of action to enforce another section of the same statute." Metzger, 209 Ill. 2d at 44; see also King, 215 Ill. 2d 1 (holding no implied right of action for damages for violation of the Attorney Act because the Act expressly provided for contempt sanctions).

In this case, count II of Ramirez' complaint seeks damages for charges by Smart which she alleges violate section 8-2001 of the Hospital Records Act. That statute however expressly provides patients with a cause of action for attorney fees if they are denied access to their records. Where, as here, the legislature has expressly provided a private right of action in a specific section of the statute, the legislature did not intend to imply

18

private rights of action to enforce other provisions. "Where the legislature intended to create private right of action for damages, it will expressly provide for that right." Metzger, 209 Ill. 2d at 43. Thus, there is no implied right of action for damages under the Act. The trial court properly granted summary judgment in favor of Smart on count II.

### D. Unjust Enrichment

Plaintiff contends that the trial court erred in granting summary judgment on her claim for unjust enrichment.

The theory of unjust enrichment is based on a contract implied in law. People ex rel Hartigan v. E & E Hauling, Inc., 153 Ill. 2d 473 (1992). To recover under a claim for unjust enrichment, the plaintiff must allege that the defendant voluntarily accepted a benefit which would be inequitable for him to retain without payment. Aardema v. Fitch, 291 Ill. App. 3d 917 (1997). Because unjust enrichment is based on an implied contract, "where there is a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." La Throp v. Bell Federal Savings & Loan Association, 68 Ill.2d 375, 391 (1977).

As Ramirez' attorney, Hanna requested that the hospital copy the records; he received the copies with a bill from Smart expressly stating the price; and thereafter paid the bill and retained the copies. Thus, Hanna, acting on behalf of Ramirez, entered into an agreement with Smart for the copies at a specified

19

price.  See <u>ARCO Petroleum Products Co. v. R & D Automotive, Inc.</u>, 118 Ill. App. 3d (1983) (party accepts a tendered contract by accepting benefits of the contract).  Since a specific agreement governed the relationship between the parties, Ramirez cannot maintain a claim based on unjust enrichment.  Therefore, the trial court properly entered summary judgment on count IV.

II.  Class Certification

To maintain a class action in Illinois, the court must find that:

> "(1) The class is so numerous that joinder of all members is impracticable.
>
> (2) There are questions of fact or law common to the class, which common questions predominate over any questions affecting only individual members.
>
> (3) The representative parties will fairly and adequately protect the interests of the class.
>
> (4) The class action is an appropriate method for the fair and efficient adjudication of the controversy."  735 ILCS 5/2-801 (West 1998).

The trial court has broad discretion to determine whether a proposed class satisfies the requirement for class certification and should err in favor of maintaining class actions.  <u>Clark v. TAP Pharmaceutical Products, Inc.</u>, 343 Ill. App. 3d 538 (2003).

Smart claims that class certification was properly denied

20

because Ramirez does not adequately represent the class and no predominate questions of law or fact are common to the class. Since Smart does not dispute the remaining requirements, we will limit our analysis to these two factors.

## A. Adequate Representative

Ramirez argues that she is an adequate representative of the class although she may have no personal knowledge of Smart's misleading or deceptive billing practices.

To adequately represent the class, the proposed class action plaintiff must be a member of the class. McCabe v. Burgess, 57 Ill. App. 3d 450 (1978). In other words, the named plaintiff must be able to maintain an individual cause of action against the defendant. Avery, 216 Ill. 2d 100. Named plaintiffs must also establish that they are not seeking relief which is potentially antagonistic to the non-represented members of the class. Client Follow-Up Co. v. Hynes, 105 Ill. App. 3d 619 (1982).

The purpose of the adequate representation requirement is merely to ensure that all class members will receive proper and efficient protection of their interests in the proceedings. Gordon v. Boden, 224 Ill. App. 3d 195 (1991). It has long been recognized that a plaintiff bringing a class action suit need only allege a viable individual cause of action, indicate that the claim is being brought as a class action, and include factual allegations broad enough to establish the possible existence of a class action. P.J.

21

Concrete Pumping Service, Inc. v. Nextel West Corporation, 345 Ill. App. 3d 992 (2004); Hayna v. Arby's, Inc., 99 Ill. App. 3d 700 (1981). The class representative need only have a marginal familiarity with the facts of the case and does not need to understand the legal theories upon which his case is based. Clark, 343 Ill. App. 3d 538. Thus, class certification may be proper even though the named plaintiff does not understand the complaint, has little knowledge of what the lawsuit is about and relies almost entirely upon the representations of another person. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, 657 F. 2d 890 (7th Cir. 1981) (citing Surowitz v. Hilton Hotels Corp., 383 U.S. 363 (1966)).

In this case, the trial court denied the motion to certify the class because Ramirez did not personally request the records or review the bill prior to paying for Smart's services. However, class certification of the consumer fraud claim is not defeated because Ramirez did not personally ask for her medical records. As Ramirez' attorney, Hanna was acting as her agent when he sent the letter to the hospital. See Doyle v. Shlensky, 120 Ill. App. 3d 807 (1983). Additionally, class certification is not defeated by Ramirez' failure to view Smart's bill. Hanna's delegation of the financial matters of his clients' accounts to his employee, McPherson, is also an agency relationship. Lang v. Silva, 306 Ill. App. 3d 960 (1999) (employee-employer relationship is one of

22

agency).  Therefore, Ramirez can establish the elements of an individual consumer fraud claim through her agents, Hanna and McPherson.  Accordingly, it is not readily apparent that Ramirez' lack of personal knowledge will interfere with her ability to prosecute the claim on behalf of the class.  See Surowitz, 383 U.S. 363 (certification proper although representative did not understand her complaint, lacked knowledge of facts of case, did not know defendants by name, nor even the nature of their misconduct); P.J.'s Concrete Pumping Service, Inc., 345 Ill. App. 3d 992 (class certified even though plaintiff filed consumer fraud claim based on communications to plaintiff's agent).

Further, Ramirez' interests are not antagonistic to the class.  Her interests are the same as those of the absentee class members, to seek damages based on defendant's deceptive or unfair charges for copying their medical records.  Although other members of the class may have different levels of knowledge about the correctness of the charges and the amount of damages, Ramirez has sufficient interest in the outcome to ensure vigorous advocacy of the claim.  See Walczak v. Onyx Acceptance Corp., 365 Ill. App. 3d 664 (2006) (individual questions of injury and damages do not defeat class certification).  Our consideration of these factors convinces us that Ramirez is an adequate class representative for a consumer fraud claim against Smart.

B.  Common Questions of Fact or Law

23

Smart claims that class certification must still be denied because common questions of fact do not predominate the case. Smart argues that individual inquiries will be required to determine the amount of overpayment by each patient and the information those patients relied upon in paying Smart's bill.

So long as questions of fact or law common to the class predominate over questions affecting only individual members of the class, the statutory requisite of commonality has been met. Steinberg v. Chicago Medical School, 69 Ill. 2d 320 (1977). A common question may be shown when the claims of the individual class members are based on the common application of a statute where the members are aggrieved by the same or similar conduct. Avery, 321 Ill. App. 3d at 280. A class action can properly be prosecuted where defendants allegedly acted wrongfully in the same basic manner as to an entire class. In such circumstances, the common class questions predominate the case, and the class action is not defeated. Gordon, 224 Ill. App. 3d 195.

A class action will not be defeated solely because factual variations exist among class members' grievances. See Clark, 343 Ill. App. 3d at 548 (individual questions of overpayment in a consumer fraud case do not bar class certification on the common questions involved because court may order separate hearings on individual questions of damages after determination of common questions of law and fact); Ridings v. Canadian Imperial Bank of

24

<u>Commerce Trust Co.</u>, 94 F.R.D 147 (N.D. Ill. 1982) (individual questions of reliance in securities fraud case do not bar class certification on the commonality requisite); see also <u>Steinberg</u>, 69 Ill. 2d 320, 228. It is appropriate to litigate the questions of fact common to all members of the class and, after the determination of the common questions, to determine in an ancillary proceeding the questions that may be peculiar to an individual class member. <u>Charles Hester Enterprises, Inc. v. Illinois Founders Insurance Co.</u>, 137 Ill. App. 3d 84 (1985).

The record reveals that the common consumer fraud question is whether Smart engaged in an unfair or deceptive scheme to charge hospital patients an excessive fee for copying their medical records. See 815 ILCS 505/2 (West 1998). That claim is based on Smart's uniform billing procedure and the standard or basic fee listed on all Smart invoices. If, at trial, it is found that Smart engaged in an unfair or deceptive practice of charging excessive fees with the intent that hospital patients rely on that deception, then Smart would have acted wrongfully in the same basic manner as to the entire class. The common question of liability will have been established, and the class members may recover a refund for their overpayment. The factual differences in overpayment and reliance by each patient do not present individual issues sufficient to bar class certification. See <u>Clark</u>, 343 Ill. App. 3d at 549. We therefore conclude that common issues regarding the

25

consumer fraud claim predominate over the issues that affect only individual members. 735 ILCS 5/2-801(2) (West 2000). Accordingly, the denial of the request for class certification as to count III is reversed.

CONCLUSION

We reverse that portion of the trial court's order granting summary judgment on count III and denying class certification and remand for further proceedings on the consumer fraud claim. The judgment of the circuit court of Peoria County is otherwise affirmed.

Affirmed in part and reversed in part; cause remanded.

LYTTON, PJ., with HOLDRIDGE and O'BRIEN, JJ., concurring.